UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————    )
                                         )
WILLIAM HOPKINS,              )
                                         )
            Plaintiff,              )
                                         )
            v.                        )        Civil Action No. 04-1591 (RWR)
                                         )
KATHIE A. WHIPPLE,          )
Director, Office of             )
Personnel Management[1]   )
                                         )
            Defendant.          )
—————————————————    )


## MEMORANDUM OPINION

Plaintiff William Hopkins filed this lawsuit against the Director of the Office of Personnel Management ("OPM") alleging that OPM discriminated against him based on his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., by not scoring Hopkins as high as he believed he should have been scored on the certificate of eligibles that accompanied Hopkins' application for a position of Russian interpreter with the United States Department of State.  Hopkins also claims that defendant's selection process has a disparate impact upon people of advanced age and people who share his national origin.  OPM moves for summary judgment on the claims of national origin and

_____

[1] Kathie A. Whipple is substituted as the defendant under Fed. R. Civ. P. 29(d).

- 2 -

age discrimination in scoring because the State Department withdrew the vacancy announcement and did not hire anyone to fill the position Hopkins sought, and moves to dismiss the disparate impact claim arguing that Hopkins failed to exhaust his administrative remedies.  Because Hopkins neither presents a prima facie case of discrimination nor rebuts as pretextual OPM's neutral rationale for not manually adjusting Hopkins' score, and because Hopkins did not satisfy administrative prerequisites with respect to his disparate impact claim, the defendant's motion to dismiss and for summary judgment will be granted.

BACKGROUND

Hopkins, a U.S. native, was a resident of the District of Columbia who was approximately 60 years of age when the events at issue occurred.  (Compl. at ¶¶ 5, 6.)  As of July 2002, Hopkins had interpreted Russian for nine years in consecutive and simultaneous nodes for Presidents and Secretaries of State.  In addition, for 20 years before that, Hopkins interpreted Russian for various United States arms negotiators, and he was the personal interpreter of the United States ambassador in Moscow for two years.  (Compl. at ¶ 6.)

In July 2002, the State Department asked OPM to refer eligible applications for four Interpreter positions in languages including French, German, Russian, and Spanish.  (Def.'s Stmt. of Material Facts Not in Dispute ("Def.'s Stmt.") at ¶ 1.)  Hopkins

- 3 -

received an e-mail from an employee of the State Department's Office of Language Services stating that the Office of Language Services was recruiting a staff Russian interpreter, and inviting Hopkins to apply for the position.  (Compl. at ¶ 9.)  Hopkins replied to the e-mail, and shortly thereafter received an official announcement via fax.  (Compl. at ¶ 10.)  The announcement included a questionnaire containing 17 questions. Hopkins applied for the position at both the grade GS-13 and grade GS-14 levels, and OPM confirmed that it had received Hopkins' application.  OPM's automated staffing system evaluated applicants' questionnaire responses and generated a numeric rating for the applicants.  (Def.'s Stmt. at ¶ 3.)  OPM staff examined the top scoring applicants' application materials and compared them to objective benchmarks to ensure the accuracy of the automated staffing systems' rankings, and to ensure that the applicants' self-assessments about their ability to interpret Russian were substantiated.  (See Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss and for Summ. J. at 10-11.)  Later, OPM informed Hopkins that his application would be considered under open competition examining procedures, and that he had been found to be qualified for the position he sought based upon OPM's review of his application.  (Compl. at ¶ 13.)

Hopkins was one of 29 applicants to apply for the Russian Interpreter position (Def.'s Stmt. at ¶ 5), and one of

- 4 -

11 candidates whose application materials OPM forwarded to the
State Department.  His score was 92 out of 100, which fell in the
category of well-qualified.  (Def.'s Stmt. at ¶ 7.)  However,
Hopkins was not interviewed for the position because the State
Department decided to interview only the top four scoring
candidates applying for the position at the GS-13 grade, and his
name was not listed as one of the top four scoring candidates.
(Pl.'s Resp. to Def.'s Mot. ("Pl.'s Resp.") Ex. 3, Sprague Aff.
at 1-2, April 15, 2003.)  In December 2002, OPM informed Hopkins
that his application "was among those referred to the selecting
official . . . .  However, no selection was made from those
referred."  (Compl. at ¶ 16; Def.'s Stmt. at ¶ 12.)  According to
Brenda Saunders Sprague, the Director of the Office of Language
Services, the vacancy announcement was withdrawn "due in large
part to a changed workload and resulting lack of work for Russian
interpreters."  (Def.'s Mot. to Dismiss and for Summ. J. ("Def.'s
Mot."), Ex. 9, Sprague Aff. ¶ 4, October 27, 2005.)

Hopkins alleges that he was the most qualified applicant
based upon objective standards used among language professionals.
However, Hopkins alleges that he was given a lower rating and
ranking on the OPM certificate of eligibles than he should have
been given because the OPM examiner favored applicants whose
national origin suggested that their native language was Russian.
(Compl. at ¶ 17.)  Hopkins contends that the extent and quality

of his qualifications were superior to that of the other identified candidates, yet were underrated by the automated computer ranking and scoring system.  According to Hopkins, the OPM examiner who reviewed his application should have realized that the computer generated ratings for other applicants were over-inflated.  He also claims that the OPM examiner made subjective determinations that had a disproportionate impact on people who were not native Russian speakers because the reviewing official subjectively over-inflated the scores for native Russian speakers.  As a result, he says, two thirds of the top-ranking candidates were people who had been educated in the Soviet Union. (Compl. at ¶¶ 18-19, 22.)  According to Hopkins, the OPM examiner should have changed or adjusted the rankings when he reviewed the top scoring applicants' application materials to account for Hopkins' superior qualifications, but did not do so.  Hopkins also alleges that he was considerably older than the applicants that OPM rated as the top three scorers.  (Compl. at ¶ 20.)

     Plaintiff filed an administrative complaint of discrimination, and OPM ultimately issued a final order denying the complaint.  (Compl. at ¶ 22.)  Hopkins then filed this action, and OPM moved for summary judgment on the claims of national origin and age discrimination in scoring in the complaint's first and second causes of action, and dismissal of

the disparate impact claim in the complaint's third cause of action.

## DISCUSSION

### I.  DISCRIMINATORY SCORING

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Feirson v. Dist. of Columbia, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (quoting Fed. R. Civ. P. 56(c)); see also Nails v. England, 311 F. Supp. 2d 116, 121 (D.D.C. 2004). "Not all alleged factual disputes represent genuine issues of material fact which may only be resolved by a jury. Material facts are those that might affect the outcome of the suit under governing law, and a genuine dispute about material facts exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Hines v. Bair, 594 F. Supp. 2d 17, 22 (D.D.C. 2009) (quoting Nails, 311 F. Supp. 2d at 121) (internal quotations omitted).

"In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." Hines, 594 F. Supp. 2d at 22 (quoting Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006) (internal quotations omitted). "Summary judgment may be granted

even if the movant has proffered no evidence, so long as the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Dist. Intown Prop. L.P. v. Dist. of Columbia</u>, 198 F.3d 874, 878 (D.C. Cir. 1999) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).  "Although the burden on the nonmoving party is not great, it is still required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial."  <u>Palestine Info. Office v. Shultz</u>, 853 F.2d 932, 944 (D.C. Cir. 1988).

In general, a prima facie claim of discrimination requires a plaintiff to establish that he is a member of a protected class and that he was subjected to an adverse employment action which gives rise to an inference of discrimination.  <u>See</u> <u>Mastro v. Potomac Elec. Power Co.</u>, 447 F.3d 843, 850 (D.C. Cir. 2006); <u>Stella v. Mineta</u>, 284 F.3d 135, 145 (D.C. Cir. 2002); <u>see also</u> <u>Heasley v. D.C. General Hosp.</u>, 180 F. Supp. 2d 158, 168 (D.D.C. 2002) ("To establish [a] prima facie case of disability, age, or race discrimination, plaintiff must establish, *inter alia*, that [his] employer took an adverse employment action against [him] because of [his] protected status.").  To establish a prima facie case of discrimination in a job referral case, plaintiff must show that 1) he belongs to a protected class; 2) he was qualified

for and requested referral to jobs for which the employer
accepted referrals; 3) he was not referred despite his
qualifications; and 4) after refusing to refer plaintiff, the
referring agency continued to refer individuals to available
positions.  See McDonnell Douglas v. Green, 411 U.S. 792, 802
(1973); Mills v. Int'l Brotherhood of Teamsters, 634 F.2d 282,
285 (5th Cir. 1981); Andrews v. Bechtel Power Corp., 780 F.2d
124, 141 (1st Cir. 1985); NAACP Labor Comm. v. Laborers' Int'l
Union of N. Am., 902 F. Supp. 688, 712 (W.D. Va. 1995); Sharpe v.
Int'l Brotherhood of Electrical Workers, Civil Action No. 85-2564
(JHP), 1990 U.S. Dist. LEXIS 7244, at *28 (D.D.C. April 30,
1990).  A plaintiff can establish the necessary inference of
discrimination by showing that a similarly situated person
outside of his protected class requested and received the benefit
he desired, or by showing that an adverse employment action was
"not attributable to 'the two most common legitimate reasons on
which an employer might rely to reject a job applicant: an
absolute or relative lack of qualifications or the absence of a
vacancy in the job sought.'"  George v. Leavitt, 407 F.3d 405,
412 (D.C. Cir. 2005) (quoting Stella, 284 F.3d at 145 (internal
quotations omitted)); see also Cones v. Shalala, 199 F.3d 512,
517 (D.C. Cir. 2000).

        In deciding summary judgment motions on Title VII and ADEA
claims, courts apply the burden-shifting framework announced in

McDonnell Douglas, 411 U.S. at 802-05.  See Barnette v. Chertoff,
453 F.3d 513, 515-16 (D.C. Cir. 2006); Hall v. Giant Food, Inc.,
175 F.3d 1074, 1077 (D.C. Cir. 1999) (citing Paquin v. Federal
National Mortgage Ass'n, 119 F.3d 23, 26 (D.C. Cir. 1997)).
Under McDonnell Douglas, if the plaintiff establishes his prima
facie case, then the employer must "produce admissible evidence
that, if believed, would establish that [its] action was
motivated by a legitimate, nondiscriminatory reason."  Royall v.
National Ass'n of Letter Carriers, 548 F.3d 137, 144-45 (D.C.
Cir. 2008) (quoting Teneyck v. Omni Shoreham Hotel, 365 F.3d
1139, 1151 (D.C. Cir. 2004)).  The defendant's burden is one of
production, meaning it does not have to "'persuade the court that
it was actually motivated by the proffered reasons.'"  Barnette,
453 F.3d at 516 (quoting Tex. Dep't of Community Affairs v.
Burdine, 450 U.S. 248, 254 (1981)).  If the defendant meets this
burden of production, the burden-shifting framework disappears,
and a court deciding a summary judgment motion looks to whether a
reasonable jury could infer intentional discrimination or
retaliation from the evidence presented by the plaintiff.

Hopkins fails to establish a prima facie case of
discrimination against OPM.  As an initial matter, OPM did refer
Hopkins' application to the State Department and assigned it a
score of 92, reflecting that he was well qualified for the
position Hopkins sought.  (Def.'s Stmt. ¶¶ 7, 10.)  This negates

- 10 -

Hopkins' implication that OPM constructively prevented him from being referred to the State Department for an interview.  (See, e.g., Pl.'s Stmt. of Genuine Issues, ¶¶ a(7), b(1).)  While Hopkins alleges that he would have been given the position if he had been granted an interview with the State Department, the vacancy announcement was withdrawn "due in large part to a changed workload and resulting lack of work for Russian interpreters."  (Sprague Aff. ¶ 4, October 27, 2005.)  It was the State Department that chose not to interview all qualified applicants, cancelled the vacancy announcement, and chose not to hire anyone for the position Hopkins sought.  (See id. ¶ 3.)  "When a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish her prima facie case."  Bowie v. Ashcroft, 283 F. Supp. 2d 25, 31 (D.D.C. 2003) (citing Morgan v. Federal Home Loan Mortgage Corp., 172 F. Supp. 2d 98, 112-113 (D.D.C. 2001) (holding that no adverse employment action exists if, when the plaintiff applied, there was no vacancy, or the position was never filled)).  Therefore, Hopkins fails to show that his failure to obtain a position with the State Department was attributable to OPM's decision not to manually adjust his evaluation score.  That is, plaintiff has not shown that OPM caused the State Department not to interview or hire him.  See Teneyck, 365 F.3d at 1153 (finding judgment as a matter of law

- 11 -

proper where the plaintiff offered no evidence indicating that the position for which she applied remained open); Hayslett v. Perry, 332 F. Supp. 2d 93, 100 (D.D.C. 2004) (finding that the plaintiff could not establish a prima facie case of employment discrimination based on non-promotion where the plaintiff lacked evidence of an available position).

Even if OPM's failure to beneficially adjust Hopkins' score could be viewed as the cause of his not being hired notwithstanding the vacancy cancellation, OPM presents a neutral explanation for its evaluation process and its failure to adjust Hopkins' score upward which Hopkins does not counter with evidence permitting any reasonable inference of discrimination. "Because courts are not superpersonnel departments that reexamine an entity's business decisions," a plaintiff must present evidence of "stark superiority of credentials over those of the successful candidates." Stewart v. Ashcroft, 352 F.3d 422, 429-30 (D.C. Cir. 2003) (internal quotations omitted); Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) ("in order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination.). "This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates." Jackson, 496 F.3d at 708. "[T]he Court will not second-guess an

employer's personnel decision unless the disparities in qualifications 'are so apparent as to virtually jump off the page and slap [it] in the face.'" <u>Hammond v. Chao</u>, 383 F. Supp. 2d 47, 58 (D.D.C. 2005) (granting government summary judgment although plaintiff alleged that she had more experience than the other candidates applying for the position) (quoting <u>Choates v. Powell</u>, 265 F. Supp. 2d 81, 95 (D.D.C. 2003)).  "Even if a court suspects that a job applicant was 'victimized by [] poor selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" <u>Fischbach v. Dist. of Columbia Dept. of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting <u>Milton v. Weinberger</u>, 696 F.2d 94, 100 (D.C. Cir. 1982)).

OPM acknowledged that the top scorers and Hopkins were experienced and well qualified.  For the court to be asked to judge whether Hopkins' credentials were starkly superior to those of the other well-qualified candidates who received higher scores would likely thrust the court into a role disfavored by <u>Jackson</u>. However, Hopkins' evidence reflects a demonstrable absence of discriminatory motive.  While OPM staff may have had discretion to subjectively alter the candidates' scores when reviewing the top scoring applicants' application materials, the questionnaire that the applicants completed contained no questions seeking the applicants' national origin or age, and Hopkins only speculates

as to how OPM would deduce that information.[2]  (See Def.'s Mot.,

Ex. 2; Pl.'s Resp. at 13.)  Although the plaintiff asserts that

John T. Mays, the OPM Human Resource Specialist who reviewed the

candidates' materials, was clearly aware of several imperfect

proxies for the applicants' national origin, such as where the

applicants were educated or whether the applicants were native

Russian speakers, Mays testified in his deposition that he was

not aware of those proxies, in part because he "didn't really

look at education," and instead focused on other factors, such as

work experience.  (See Pl.'s Resp. Ex. 8 ("Mays Dep") at 216-

217.)  In addition, Mays measured applicants against external

benchmarks, not against each other, and raised and lowered

applicants' scores based upon discrepancies between their

application materials and their self-assessed ability to

interpret Russian.  (Mays Dep. at 151, 180-182, 191-192.)

Hopkins also argues that he should have been ranked higher than

the top-ranked native Russian-language candidate because of his

_____

     [2] While the questionnaire asked for the applicants'
citizenship, citizenship and national origin are distinct
concepts.  "Title VII forbids discrimination on the basis of
national origin, not of citizenship."  Nyunt v. Tomlinson, 543 F.
Supp. 2d 25, 41 (D.D.C. 2008) (quoting Fortino v. Quasar Co., 950
F.2d 389, 391 (7th Cir. 1991)).  In addition, while the job
announcement informed applicants that they would be required to
provide "all biographic information" sought on Form 1203-FX, the
biographic data that Form 1203-FX sought was an applicant's first
name, middle initial, last name, street address (including city,
state, country, zip code), preferred contact time, and telephone
number.  The form did not seek national origin or age data.

- 14 -

superior experience.  However, their scores were close, and two applicants Hopkins cites nonetheless each possessed a significant amount of experience interpreting Russian.  (Pl.'s Resp. at 10.) Further, Hopkins acknowledges that a non-native Russian speaker was the second-highest scoring applicant, receiving a rating of 98.0, placing her in the top three on the certificate of eligibles and in the State Department's range of targeted interviewees.  (Pl.'s Resp. at 10-11.)  There is no reasonable factual dispute left, then, for a jury to decide on the claim that discriminatory scoring deprived Hopkins of a job.

## II.  DISPARATE IMPACT

OPM moves under Federal Rule of civil Procedure 12(b)(1) to dismiss Hopkins' Title VII and ADEA disparate impact claims contained in the third cause of action in Hopkins' complaint, arguing that Hopkins failed to satisfy the jurisdictional prerequisite of exhausting his administrative remedies.  However, "motions to dismiss for failure to exhaust administrative remedies are more appropriately analyzed under Rule 12(b)(6)[,]" which involves failure to state a claim for which relief can be granted.  Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 64 n.6 (D.D.C. 2008) (quoting Hazel v. Wash. Metro. Transit Auth., Civil Action No. 02-1375 (RWR), 2006 WL 2024966, at *3 (D.D.C. Dec. 4, 2006)).  "In order to survive a motion to dismiss under Rule 12(b)(6), the allegations stated in the

- 15 -

contested portion of the plaintiff's complaint 'must be enough to
raise a right to relief above the speculative level[.]'" Demery
v. Montgomery County, 602 F. Supp. 2d 206, 212 (D.D.C. 2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
If a plaintiff does not assert sufficient facts to support his
claim, that claim must be dismissed. Demery, 602 F. Supp. 2d
at 212.

A disparate impact claim is distinct from the disparate
treatment claims Hopkins has alleged, and requires distinct
elements of proof. Disparate impact claims arise from employment
practices that are facially neutral in their treatment of
different groups, but that fall more severely on one statutorily
protected group than another in practice, and which a defendant
cannot justify by business necessity. Smith v. City of Jackson,
544 U.S. 228, 241 (2005). If an applicant for federal employment
believes that any practice has discriminated against him on the
basis of national origin or age, he must consult an agency equal
employment opportunity ("EEO") counselor in an effort to solve
the situation informally. See 29 C.F.R. § 1614.105(a). This
contact with the EEO counselor must occur within 45 days of the
alleged discriminatory incident. See 29 C.F.R. § 1614.105(a)(1).
Alternatively, if the complainant alleges a violation of the
ADEA, the complainant can avoid seeking relief administratively,
and can instead decide to "bring the claim directly to federal

- 16 -

court, so long as, within 180 days of the allegedly
discriminatory act, he provides the [Equal Employment Opportunity
Commission] with notice of his intent to sue at least 30 days
before commencing suit." Hunter v. Rice, 531 F. Supp. 2d 185,
190 (D.D.C. 2008) (citing 29 U.S.C. § 633a(c) and (d)).  A
defendant bears the burden of proving that a plaintiff failed to
exhaust these administrative requirements.  See Colbert v.
Potter, 471 F.3d 158, 165 (D.C. Cir. 2006); Armstrong v. Reno,
172 F. Supp. 2d 11, 20 (D.D.C. 2001) (citing Bowden v. United
States, 106 F.3d 433, 437-38 (D.C. Cir. 1997) and Brown v. Marsh,
777 F.2d 8, 13 (D.C. Cir. 1985)).

Assuming that a disparate impact claim under the ADEA
against a federal employer is legally cognizable,[3] Hopkins did
not comply with the administrative requirements under the ADEA or
Title VII before filing a lawsuit alleging disparate impact.
Hopkins' administrative complaint of discrimination did not raise
a disparate impact claim against the OPM's employment policies,
and there was no discussion of a disparate impact claim in the
counselor's report or the investigative record.  Hopkins'
administrative complaint, filed with OPM on December 31, 2002
states:

_____

[3] See Aliotta v. Bair, 576 F. Supp. 2d 113, 127 n.7 (D.D.C.
2008) (noting that "[m]embers of the D.C. District Court remain
divided on the issue" of whether a plaintiff may allege disparate
impact under the ADEA against a federal employer.)

> It is my position that I should have been selected and
> employed for one of the two positions for which I
> applied.  Because I was discriminated against in the
> selection process, I contend I should be compensated
> with back pay and other economic losses I suffered as a
> result of the discriminatory conduct in the selection
> process.  I also seek compensatory damages for injury
> to my professional reputation and for psychological and
> emotional distress I have suffered.  In the
> alternative, I should be ranked and listed among the
> top 3 candidates on a new referral to the Department of
> State and compensated with back pay and other economic
> losses I have suffered as a result of the
> discriminatory conduct by OPM.  Prior to such a
> determination, I also seek an explanation of and the
> criteria used for assigning each candidate's
> certification ranking, as well as the ranking of the
> candidates as to the two positions.

(See Def.'s Mot., Ex. 15B.)  Specificity in a charge is not a

"mere technicality" and compliance with all administrative

procedures and deadlines is mandatory.  Park v. Howard Univ., 71

F.3d 904, 908-909 (D.C. Cir. 1995) (finding that a Title VII

plaintiff had not exhausted her administrative remedies because

her administrative complaint did not contain the allegation of

hostile work environment that appeared in the court complaint);

see also Lane v. Hilbert, Civil Action No. 03-5309, 2004 U.S.

App. LEXIS 9397, at *2 (D.C. Cir. May 12, 2004) (affirming

district court's dismissal of plaintiff's claim where plaintiff's

district court complaint alleged disparate treatment on account

of sex, but her administrative complaint did not).  The

allegations in an administrative complaint must be sufficiently

specific to give a federal agency the opportunity to handle the

matter internally, and Hopkins' allegations did not provide a

- 18 -

sufficient basis upon which the agency would know that he was
alleging that the ranking process itself resulted in a disparate
impact upon people within certain classes of age and national
origin.  Brown, 777 F.2d at 14; Park, 71 F.3d at 907.  In
addition, the plaintiff does not present any evidence that he
provided the advance notice of his intent to sue concerning
disparate impact as is required by 29 U.S.C. § 633a(c) and (d).

## CONCLUSION

Hopkins does not present a prima facie case that OPM scored
his application discriminatorily or demonstrate that the OPM's
stated rationale for not manually adjusting Hopkins' score was
pretext.  Hopkins also did not pursue his administrative remedies
with respect to his disparate impact claim.  Thus, the
defendant's motion to dismiss and for summary judgment will be
granted.  An appropriate Order accompanies this Memorandum
Opinion.

SIGNED this 30th day of June, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge